IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| REBECCA CARTEE-HARING<br><br>v.<br><br>CENTRAL BUCKS SCHOOL DISTRICT | CIVIL ACTION NO. 20-1995 |
|---|---|
| DAWN MARINELLO,<br>*individually and on behalf of similarly situated female employees,*<br><br>v.<br><br>CENTRAL BUCKS SCHOOL DISTRICT | CIVIL ACTION NO. 21-2587 |

**MEMORANDUM RE: PLAINTIFF DAWN MARINELLO'S MOTION FOR FINAL CERTIFICATION, OR IN THE ALTERNATIVE, CONDITIONAL CERTIFICATION OF COLLECTIVE ACTION AND FOR CLASS CERTIFICATION**

**Baylson, J.**                                                                                                **August 24, 2022**

Plaintiff Dawn Marinello ("Marinello"), in her individual capacity and on behalf of similarly situated female teachers, seeks final certification of her Equal Pay Act, 29 U.S.C. § 206(d)(1), claim against Defendant Central Bucks School District ("District"), so she may proceed with the claim as a collective action. See Motion for Certification (Civ. A. No. 21-2587, ECF 27 ("Mot. at [page number]")). Because Marinello's Equal Pay Act ("EPA") claim has yet to be conditionally certified, she alternatively seeks conditional certification. Id.[1]

For the foregoing reasons, Marinello's Motion for Final Certification of her Equal Pay Act claim to proceed as a collective action is **GRANTED**. Marinello's Motion, in the alternative, for

---

[1] Marinello also moved for FED. R. CIV. P. 23 class certification of her Title VII and PHRA claims, but Plaintiff withdrew her motion for class certification at the conclusion of the evidentiary hearing held on June 28, 2022. Transcript of Evidentiary Hearing at 120:10–23, Dawn Marinello v. Central Bucks Sch. Dist., Civ. A. No. 21-2587.

1

conditional certification of the same claim is therefore **DENIED as moot.**

I.     **RELEVANT FACTUAL BACKGROUND**[2]

    A.     **The District's Salary Schedules**[3]

Since 2000, the District has used Salary Schedules to calculate the salaries of its fulltime faculty members for each school year. Am. Compl. ¶ 10. The Salary Schedules operate as a grid, with increasing "steps" listed vertically along the y axis and various educational levels listed horizontally across the x axis. See Mot. Ex. A. Fulltime teachers were to be paid the salary in the box located where the "step" placement and "educational level" obtained intersect. Id.

The first criterion of the Salary Schedules is the "step" criteria; ech "step" is "the number of years' experience a teacher has teaching in a public school in Pennsylvania." Am. Compl. ¶ 12. The second criterion, "educational level", reflects the level of education the teacher received; it corresponds to "whether the teacher has a Bachelor's Degree; a Bachelor's Degree plus an additional 24 post-graduate credits; a Master's Degree; a Master's Degree plus an additional 15 post-graduate credits; and a Master's Degree plus an additional 30 post-graduate credits." Am. Compl. ¶ 13.

    B.     **Plaintiff Dawn Marinello**

Since August 2016, the District has employed Marinello as a full-time English teacher. Am. Compl. ¶ 4. Before Marinello accepted the District's offer of employment, the District informed her that the Salary Schedules, and only the factors contained therein, dictated the annual

---

[2] Unless otherwise indicated, all facts are derived from Plaintiff's First Amended Collective Action and Class Action Complaint. ECF 23 ("Am. Compl.").

[3] This Court previously summarized the District's Salary Schedules in the Memorandum of Law regarding Plaintiff Cartee-Haring's Motion for Partial Summary Judgment. Cartee-Haring v. Central Bucks Sch. Dist., Civ. A. No. 20-cv-1995, 2022 WL 2305774, at *1 (E.D. Pa. June 27, 2022).

salaries of fulltime teachers employed by the District. Am. Compl. ¶ 11.

Prior to her employment with the District, Marinello had earned a bachelor's degree, a master's degree, and maintained Instructional I and Instructional II teaching certifications both issued by Pennsylvania. Id. at ¶¶ 5, 9, 17. At the time Marinello began working for the District, she had fourteen (14) years of prior teaching experience in Pennsylvania public schools. Am. Compl. ¶¶ 6–8, 16. Therefore, Marinello's "step" placement should have been Step 15, as she was to begin her fifteenth year of teaching when the 2016-2017 school year began. Am. Compl. ¶¶ 18–19. Placement on the Salary Schedule at Step 15 with an educational level of a master's degree would have yielded a $98,379 annual salary. Am. Compl. ¶ 20. However, Marinello alleges the District placed her at Step 1; at Step 1 with a master's degree Marinello was paid an annual salary of $51,157. Id. at ¶ 21.

C. **Other District Employees Similarly Situated to Marinello**

The following witnesses testified live at an evidentiary hearing held on June 28, 2022 regarding this Motion. See generally Trans. of Evid. Hrg., Dawn Marinello v. Central Bucks Sch. Dist., Civ. A. No. 21-2587.

1. Amy Wittman[4]

Ms. Amy Wittman was employed by the District from 2008–2021. Ms. Wittman earned a bachelor's degree, a master's degree, and worked for three (3) years in Pennsylvania public schools before working for the District.

When Ms. Wittman began teaching for the District she was placed at Step A[5] which

---

[4] Amy Wittman testified via telephone during the June 14, 2022 hearing. Trans. of Evid. Hrg. at 8:6–14:14, Dawn Marinello v. Central Bucks Sch. Dist., Civ. A. No. 21-2587.

[5] Beginning with the 2010-2011 school year, the Steps on the Salary Schedules were numbered 1-15, whereas previously they had been labelled A-O. See Pl.'s SUF, Ex. A.

reflected fewer than three (3) years of prior teaching experience in a Pennsylvania public school district. See Ex. A, at Central Bucks School District 2008–09 Salary Schedule, CBSD 0285. Placement at Step C reflected prior teaching experience of three (3) years. Id. Ms. Wittman testified the Assistant Superintendent of the District told her she would not receive credit for the three (3) years she previously taught in Pennsylvania public schools. Ms. Wittman's annual salary at Step A with bachelor's and master's degrees was $48,400, but placement at Step C with bachelor's and master's degrees entitled her to an annual salary of $50,100. Id. Because Ms. Wittman's initial placement on the Salary Schedules was inaccurate, her Step placement for every school year thereafter likewise inaccurately reflected the number of years of teaching experience Ms. Wittman actually possessed.

2. Rebecca Cartee-Haring[6]

Ms. Rebecca Cartee-Haring ("Cartee-Haring")[7] was hired by the District in 2007, and she continues to teach English there. Ms. Cartee-Haring testified that she earned a bachelor's degree, a master's degree, and had nine (9) years of prior teaching experience in a Pennsylvania public school district, Hatboro-Horsham Public School District, before her employment with the District began.

When Cartee-Haring began teaching at the District, her placement on the Salary Schedules

---

[6] Trans. of Evid. Hrg. at 33:1–46:22, Dawn Marinello v. Central Bucks Sch. Dist., Civ. A. No. 21-2587.

[7] Although Rebecca Cartee-Haring maintains her own action against Central Bucks School District alleging Equal Pay Act, Title VII and PHRA claims (see generally Civ. A. No. 20-1995, ECF 26), Cartee-Haring will become a member of Marinello's collective class of Equal Pay Act plaintiffs. See Trans. of Mot. for Class Certification or Collective Action Hrg. at 10:14–24 Dawn Marinello v. Central Bucks Sch. Dist., Civ. A. No. 21-2587 (Mr. Mazurek, counsel for both Cartee-Haring and Marinello, explaining Cartee-Haring's Equal Pay Act claim would "proceed along with Marinello, assuming the Court is going to grant certification of the collective action.").

accurately reflected her educational level obtained, but her placement at Step D[8] inaccurately reflected the number of years of prior teaching experience Cartee-Haring possessed. Step D placement reflected a teacher who had only four (4) years of prior teaching experience, while Step J credited a teacher entering their tenth year of teaching, or nine (9) years of prior teaching experience in Pennsylvania public schools. See Ex. A, at Central Bucks School District 2007–08 Salary Schedule, CBSD 0286. Cartee-Haring's annual salary at Step D with bachelor's and master's degrees was $51,800, but placement at Step J with bachelor's and master's degrees entitled her to an annual salary of $66,650. Id. Because Cartee-Haring's initial placement on the Salary Schedules was inaccurate, her Step placement for every school year thereafter was likewise inaccurate.

    3.    Robin Ryan[9]

Ms. Robin Ryan was hired by the District in August 2011 to fill a long-term substitute "LTS" position for the 2011–2012 school year. At some point thereafter, Ms. Ryan entered into a full-time teaching contract with the District, and Ms. Ryan presently teaches physics there. Prior to her employment with the District, Ms. Ryan earned a bachelor's degree, a master's degree, and worked for four (4) years in Pennsylvania public schools.

When Ms. Ryan began teaching for the District she was placed at Step 1, which indicated she had only one (1) year of prior experience teaching in a Pennsylvania public school. See Ex. A,

---

[8] Cartee-Haring testified that she was first placed at Step E, not Step D. Defendant elicited Cartee-Haring's mistake on cross-examination, but its relevance to this Memorandum is scant because either placement, Step E or Step D, failed to accurately credit Cartee-Haring for her prior years of teaching experience in Pennsylvania public schools. See generally Trans. of Evid. Hrg. at 37:1–18, Dawn Marinello v. Central Bucks Sch. Dist., Civ. A. No. 21-2587.

[9] Trans. of Evid. Hrg. at 47:6–53:13, Dawn Marinello v. Central Bucks Sch. Dist., Civ. A. No. 21-2587.

at Central Bucks School District 2011–12 Salary Schedule, CBSD 0284. Ms. Ryan testified her Science Curriculum Coordinator told her it was the District's policy to start all teachers new to the District at Step 1, regardless of the number of years of prior experience they actually had teaching in Pennsylvania public schools. Ms. Ryan's annual salary at Step 1 with bachelor's and master's degrees was $49,200, but placement at Step 5 (accounting for her four years prior teaching experience) with bachelor's and master's degrees entitled Ms. Ryan to an annual salary of $59,376. Id. Although Ms. Ryan transitioned from a LTS to a fulltime teacher, the District never reassessed her placement on its Salary Schedules.

    4.    Samantha Gambles[10]

Ms. Samantha Gambles was hired by the District in April 2014, and her background is in Special Education and Mathematics. Ms. Gambles earned a bachelor's degree, a master's degree, and had eighteen (18) credits beyond her master's at the time she was hired.[11] Ms. Gambles had four (4) years of prior teaching experience in Pennsylvania public schools.

When Ms. Gambles began teaching for the District she was placed at Step 1, which indicated she had only one (1) year of prior experience teaching in a Pennsylvania public school. See Ex. A, at Central Bucks School District 2014–15 Salary Schedule, CBSD 0282. Ms. Gambles testified she was told the District places all teachers who did not possess prior teaching experience in the Central Bucks School District at Step 1. Ms. Gambles' annual salary at Step 1 with

---

[10] Trans. of Evid. Hrg. at 53:25–60:18, Dawn Marinello v. Central Bucks Sch. Dist., Civ. A. No. 21-2587.

[11] Ms. Gambles testified she presently has thirty (30) credits beyond her master's degree. The difference between eighteen and thirty credits is significant because one delineation of educational level on the Salary Schedules occurs between the "Masters + 15 [credits]" level and the "Masters + 30 [credits]" level. Trans. of Evid. Hrg. at 55:16–20, Dawn Marinello v. Central Bucks Sch. Dist., Civ. A. No. 21-2587; see also Ex. A, at Central Bucks School District 2014–15 Salary Schedule, CBSD 0282.

bachelor's and master's degrees was $50,897, but placement at Step 5 (accounting for her four years of prior experience) with bachelor's and master's degrees warranted an annual salary of $61,664.  Id.  Because Ms. Gambles' initial placement on the Salary Schedules was inaccurate, her Step placement for every school year thereafter likewise inaccurately reflected the number of years of teaching experience Ms. Gambles actually possessed.

5. Jacqueline Carmeans[12]

Ms. Jacqueline Carmeans was hired by the District in 2015.  Ms. Carmeans earned a bachelor's degree, a master's degree, and had forty-five (45) credits beyond her master's at the time she was hired.  Ms. Carmeans had ten (10) years of prior teaching experience in New Jersey schools, and no prior experience in Pennsylvania public schools.

When Ms. Carmeans began teaching for the District she was placed at Step 3 with a "Masters + 15" credits.  Ms. Carmean's placement was incorrect both in her Step placement and her educational level placement.  Her placement at Step 3 indicated she possessed three (3) years of experience teaching in Pennsylvania public schools, despite the fact that she possessed none.  See Ex. A, at Central Bucks School District 2015–16 Salary Schedule, CBSD 0282.  Her placement at "Masters + 15" under credited her thirty (30) credits beyond her Master's degree that Ms. Carmeans had earned; an accurate educational level placement would have been "Masters + 30." See Ex. A, at Central Bucks School District 2014–15 Salary Schedule, CBSD 0282.  Ms. Carmeans' annual salary at her Step 3 and "Masters + 15" placement was $56,611, but an accurate placement for Ms. Carmeans at Step 1 and "Masters +30" would have entitled her to an annual

---

[12] Trans. of Evid. Hrg. at 60:23–69:16, Dawn Marinello v. Central Bucks Sch. Dist., Civ. A. No. 21-2587.

7

salary of $54,812.[13]  Because Ms. Carmeans' initial step and educational level placements on the Salary Schedules were inaccurate, her placement on the Schedules continues to be inaccurate.

      6.     Sharon Payne[14]

Ms. Sharon Payne was hired by the District in February 2015 as a LTS, but she transitioned to a full time teacher for the District in August 2015.  Ms. Payne earned a bachelor's degree, a master's degree, and had forty-five (45) credits beyond her master's at the time she was hired.  Ms. Payne had twenty-five (25) total years of prior teaching experience, fourteen (14) of which was in public schools in Pennsylvania.

With fourteen years of prior teaching experience and forty-five credits beyond her master's degree, Ms. Payne's should have been placed at Step 15 and "Masters + 30" entitling her to an annual salary of $104,730.  See Ex. A, at Central Bucks School District 2015–16 Salary Schedule, CBSD 0282.  Instead, when Ms. Payne was hired as a LTS, she was placed at Step 1 and "Masters" which awarded Ms. Payne an annual salary of $50,897.  Id.  In 2016 Ms. Payne filed a grievance with the District regarding her pay, and she was awarded a settlement that credited her for only fifteen of her thirty credits earned beyond her master's degree.  Trans. of Evid. Hrg. at 73:9–12, Dawn Marinello v. Central Bucks Sch. Dist., Civ. A. No. 21-2587.  Because Ms. Payne's initial placement on the Salary Schedules was inaccurate, her Step placement for every school year thereafter likewise inaccurately reflected the number of years of teaching experience Ms. Payne actually possessed.

---

[13] Ms. Carmeans is the only proposed similarly situated employee to Marinello whose Salary Schedule placement over credited her for her prior years of teaching experience, but her placement still under credited her for the educational level she obtained.

[14] Trans. of Evid. Hrg. at 69:21–74:10, Dawn Marinello v. Central Bucks Sch. Dist., Civ. A. No. 21-2587.

       7.      Karin Majewski[15]

Ms. Karin Majewski was hired by the District in August 2016 and currently teaches Special Education there. At the time she was hired, Ms. Majewski had a bachelor's degree and a master's degree, and had two (2) years of prior teaching experience in a Pennsylvania public school district.

With two years of prior teaching experience, a bachelor's degree, and a master's degree, Ms. Majewski's placement should have been at Step 2, earning her $53,124 per year. See Ex. A, at Central Bucks School District 2016–17 Salary Schedule, CBSD 0281. Instead, Ms. Majewski was placed at Step 1 which awarded her an annual salary of $51,157. Id. Because Ms. Majewski's initial placement on the Salary Schedules was inaccurate, her Step placement for every school year thereafter likewise inaccurately reflected the number of years of teaching experience Ms. Majewski actually possessed.

    **D.**    **Examples of Male Teachers**

Plaintiff Marinello identified twenty-six (26) male teachers for whom the District's Salary Schedules applied. The District placed each of these twenty-six male teachers at a *higher* Step on its Salary Schedules than the Step their individual credentials actually merited, and this resulted in overpayment, not underpayment, to these male teachers: (1) John Donnelly, (2) Robert Zimmerman (3) Stuart Kesilman, (4) David Mussari, (5) Edward Protzman, (6) Frank Rutz, (7) David Isaacsohn, (8) Joseph Ruggieri, (9) Erik Smith, (10) Adam Controy, (11) Jason Morehouse, (12) Joseph Radcliff, (13) Brian Swank, (14) Zachary Fuller, (15) Joseph Shousky, (16) Vilas Vilbas, (17) Patrick Wheeles, (18) Walter Sandstrom, (19) James Achuff, (20) Angelo Menta, (21) David Filson, (22) Robert Rowan, (23) Youseff Abdelwahab, (24) Daniel Beal, (25) John Peathean, and (26) Anthony Arno. See Mot. at 7–8, 17–26.

---

[15] Trans. of Evid. Hrg. at 74:16–80:13, Dawn Marinello v. Central Bucks Sch. Dist., Civ. A. No. 21-2587.

## II.    PARTIES' RELEVANT CONTENTIONS

Plaintiff defines its putative collective class as,

> All women teachers employed by the District from 2000 through the present who have been subject to compensation under the District's applicable Salary Schedules who were treated less favorably than male teachers employed by the District from 2000 through the present with respect to compensation under the applicable Salary Schedules.

Mot. at 29. Plaintiff argues final certification of this collective is proper because the two-step analysis courts traditionally apply to collective certification is not actually required (Mot. at 28), and Plaintiff argues she established, by a preponderance of the evidence, a putative class of similarly situated female teachers were also subjected to the District's practice of underpaying female educators by assigning them inaccurate placements on the District's Salary Schedules. Mot. at 28–33.

The District counters Plaintiff's putative class cannot be certified, conditionally or with finality, because: (i) the putative class of opt-in plaintiffs are subject to different statutes of limitations dependent upon their respective dates of employment with the District (Resp. at 28–30)[16]; (ii) some putative class members had no prior working experience, so their placement at Step 1 was accurate (Resp. at 30); (iii) the putative opt-in plaintiffs are not similarly situated because they teach different subjects and at different grade levels (Resp. at 31–32); (iv) since 2000, the District has utilized different procedures directing its Salary Schedule placements, so the putative opt-in plaintiffs cannot be said to have been subjected to a "common" District policy or practice (Resp. at 32–33); and (v) Plaintiff's putative class of opt-in plaintiffs is nothing more than a fail–safe class (Resp. at 34–35).

---

[16] Central Bucks School District's Response in Opposition to Plaintiff's Motion for Class Certification and Collective Action Certification. ECF 30 ("Resp. at [page number]").

### III.  LEGAL STANDARD

The Equal Pay Act prohibits employers from compensating employees of one sex differently than it compensates employees of another when the work all the employees perform requires equal skill, effort, and responsibility and is performed under similar working conditions. 29 U.S.C. § 206(d)(1). The Fair Labor Standards Act ("FLSA") provides a mechanism through which individual Equal Protection Act ("EPA") litigants can aggregate their claims and proceed collectively. 29 U.S.C. § 216(b) ("Any action to recover [29 U.S.C. § 206 liability] may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."). This collective action differs notably from a FED. R. CIV. P. 23 class action in that "the existence of a collective action depends upon the affirmative participation of opt-in plaintiffs" as opposed to a Rule 23 class which is comprised of plaintiffs who did not affirmatively opt-out. Halle v. West Penn Allegheny Health System Inc., 842 F.3d 215, 224 (3d Cir. 2016).

Collective certification analysis typically proceeds in two stages: (1) conditional certification and (2) final certification. Karlo v. Pittsburgh Glass Works, LLC, 849 F.3d 61, 85 (3d Cir. 2017). At the first stage, the named plaintiff must "make a modest factual showing to demonstrate a factual nexus between the manner in which the employer's alleged policy affected [her] and the manner in which it affected the proposed collective action members." Id. (citing Halle, 842 F.3d at 223). If the court is satisfied the plaintiff met its "modest factual showing" burden, then it will conditionally certify a collective class of plaintiffs, authorize notice to be issued to that class, and pretrial discovery will proceed. Symczyk v. Genesis HealthCare Corp., 656 F.3d 189, 192 (3d Cir. 2011). At the second stage, the plaintiff must prove, by a preponderance of the evidence, that the opt-in plaintiffs are similarly situated to her, meaning the opt-in plaintiffs were "subjected to some common employer practice that, if provided, would help demonstrate a

11

violation." Zavala v. Wal Mart Stores Inc., 691 F.3d 527, 538 (3d Cir. 2012).

## IV. ANALYSIS

### A. Final Certification

Although the two-step collective certification analysis has been adopted by the Third Circuit, the approach is "nowhere mandated." Zavala, 691 F.3d at 536. Here, to certify the class conditionally, then proceed with notice and opt-in specific discovery before proceeding to final certification, would be an inefficient use of judicial resources.

This Court held an evidentiary hearing on June 28, 2022 to ascertain the similarities between Plaintiff's proposed plaintiffs. Eight female educators testified at the hearing to the following: each witness was a female; each witness was a teacher employed by the District for some period of time between 2000 and the present; each witness earned either greater educational credentials than what her placement on the District's Salary Schedules reflected or possessed more years of prior teaching experience in Pennsylvania public school districts than her placement reflected; and each witness's inaccurate placement on the Salary Schedule(s) resulted in her receiving an annual salary lower than the annual salary her credentials actually entitled her to. See generally supra Section I(C). The testimony given at the evidentiary record made clear that Plaintiff established, by a preponderance of the evidence, that several women were similarly situated to Plaintiff in that they were also female educators, employed by the District, who were subjected to the same District Salary Schedules[17], and who all received inaccurate placements on

---

[17] William Senavaitis, the President of the Central Bucks Education Association, testified at the evidentiary hearing that "all teachers in the District are subject to the exact same terms and conditions of employment." Transcript of Evidentiary Hearing at 16:20–17:21, Dawn Marinello v. Central Bucks Sch. Dist., Civ. A. No. 21-2587. Andrea Didio-Hauber, the Director of Human Resources for the District, also testified the District's Salary Schedules mandate a District teacher's annual salary. Trans. of Evid. Hrg. at 85:24–86:9, Dawn Marinello v. Central Bucks Sch. Dist., Civ. A. No. 21-2587.

their respective school year's Salary Schedule which resulted in their underpayment. When compared to the twenty-six male educators who were also inaccurately placed on the Salary Schedules, but whose placements yielded overpayment not underpayment, the Court finds Plaintiff sufficiently established her burden as outlined in Zavala such that final certification of Plaintiff's putative class is proper.

**B.     Statute of Limitations**

Plaintiff seeks final certification of a collective class of female teachers employed by the District at any time between 2000 through the present. Mot. at 29. Defendant argues this proposed collective cannot be certified because the potential claims of most teachers employed by the District during that twenty-two time span will be barred, in whole or in part, by the EPA's two-year statute of limitations. Resp. at 28–30. Plaintiff argues the applicable statute of limitations did not begin to run as of the date the teachers were paid unequally, rather it began to run once Marinello and the putative class discovered they were being compensated unequally in 2020. Plaintiff's Supplemental Post Hearing Memorandum of Law in Support of Final Certification ("Pl. Supp. Br. at [page number]") at 8–16. Plaintiff relies on doctrines of "the discovery rule" and equitable tolling (id.) but Defendant argues both are inapplicable. Defendant Central Bucks School District's Supplemental Briefing in Opposition to Plaintiff's Motion for Collective Certification ("Def. Supp. Br. at [page number]") at 9–17.

Violations of the Equal Pay Act are subject to a two-year statute of limitations unless the violation was willful in which case a three-year statute of limitations applies and begins to run on the date the cause of action accrues. 29 U.S.C. § 255(a).

> In employment discrimination suits, the proper focus of the statute of limitations inquiry is on the time of the *discriminatory act*, not the point at which the consequences of the act become painful. ***However, if the alleged discriminatory conduct is a 'continuing***

13

> *violation' the statute of limitations begins to run on the date of the last occurrence of discrimination, rather than the first*.

Miller v. Beneficial Mgmt. Corp., 977 F.2d 834, 842 (3d Cir. 1992) (emphasis added). Unequal payment constitutes a continuing violation when an "employer's continued failure to pay the member of the lower paid sex the wage rate paid to the higher paid [sex occurs]. [] [I]t is no defense that the unequal payments began prior to the [EPA's] statutory period." Id. (quoting 29 C.F.R. § 1620.13(b)(5).

Here, Plaintiff set forth evidence of the District's unequal payment to female teachers beginning in 2000 (Mot. Ex. G, Joan Collier Declaration at ¶¶ 4–9) and continuing through the present[18]. Plaintiff also established the female teachers did not know they were being compensated less than their male counterparts before 2020[19], and on several occasions the District misstated how it utilized its Salary Schedules to calculate the female teachers' annual salaries.[20] This pattern constitutes a continuing violation, so "the statute of limitations begins to run on the date of the last occurrence of discrimination, rather than the first." Miller, 977 F.2d at 844. Because Plaintiff established members of the collective continue to be compensated unequally currently, the statute of limitations applicable to the collective will begin to run on the date of the last unequal payment made to a female District teacher.

---

[18] Mot. Ex. H, Cartee-Haring Dec. at ¶ 13; Mot. Ex. I, Theresa Divita Dec. ¶ 13; Mot. Ex. J, Samantha Gambles Dec. ¶ 13; Trans. of Evid. Hrg. at 47:13–18, 49:23–50:5, Dawn Marinello v. Central Bucks Sch. Dist., Civ. A. No. 21-2587.

[19] Mot. Ex. G, Joan Collier Dec. at ¶ 13; Mot. Ex. H, Cartee-Haring Dec. at ¶ 14; Mot. Ex. I, Theresa Divita Dec. ¶ 14; Mot. Ex. J, Samantha Gambles Dec. ¶ 14.

[20] Mot. Ex. G, Joan Collier Dec. at ¶ 10; Mot. Ex. H, Cartee-Haring Dec. at ¶ 10; Mot. Ex. I, Theresa Divita Dec. ¶ 11; Mot. Ex. J, Samantha Gambles Dec. ¶ 11; Trans. of Evid. Hrg. at 11:2–10, 34:21–35:5, 58:23–25, 71:24–72:5, 76:2–10, Dawn Marinello v. Central Bucks Sch. Dist., Civ. A. No. 21-2587.

## V. CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Final Certification of her Equal Pay Act claim to proceed as a collective action is **GRANTED**.  Plaintiff's Motion, in the alternative, for conditional certification of the same claim is therefore **DENIED as moot.**