**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **REBECCA CARTEE-HARING,** *Plaintiff*,<br><br>**v.**<br><br>**CENTRAL BUCKS SCHOOL DISTRICT,** *Defendant*. | **CIVIL ACTION**<br><br>**NO.  20-1995** |

### MEMORANDUM RE: MOTION FOR SUMMARY JUDGMENT

Baylson, J.                                                          June 11, 2024

Plaintiff Rebecca Cartee-Haring claims that Defendant Central Bucks School District ("Defendant" or "Central Bucks") did not renew her appointment as head coach of the girls' lacrosse team at Central Bucks West High School in 2019 because of her gender, age, or disability status and also claims that she was not selected to fill the same coaching position in 2021 because Defendant was retaliating against her for her earlier claims or because of discrimination based on her age.  Pending before this Court is Defendant's Motion for Summary Judgment.  For the reasons provided below, Defendant's Motion for Summary Judgment is granted.[1]

## I.       RELEVANT FACTUAL BACKGROUND[2]

Plaintiff was hired by Defendant as a long-term substitute English teacher at Central Bucks West High School ("C.B. West") in August 2007 and has remained in this role continuously since

---

[1] Unless otherwise noted, all citations in this Memorandum are to the <u>Cartee-Haring</u> docket, 20-1995.

[2] All facts, unless otherwise noted, are taken from Defendant's Statement of Undisputed Facts in Support of its Motion for Summary Judgment (ECF 134) and Plaintiff's Answer to Defendant's Statement of Allegedly Undisputed Facts and Counterstatement of Facts (ECF 140-1).

2007.  ECF 134 ¶¶ 2, 6; ECF 140-1 ¶¶ 2, 6.  Plaintiff was the assistant coach for C.B. West's girls' lacrosse team from 2013 through at least 2017.  ECF 134 ¶ 7; ECF 140-1 ¶ 7.  Plaintiff was then hired as the head coach of the girls' lacrosse team in 2018.  ECF 134 ¶ 8; ECF 140-1 ¶ 8.  Central Bucks makes year-to-year coaching appointments and reserves the right not to reappoint a coach from year to year.  ECF 134 ¶ 9; ECF 140-1 ¶ 9.

The captain of the girls' lacrosse team during the 2018-2019 athletic season was a student identified as "Rita Roe."  ECF 134 ¶¶ 10-11; ECF 140-1 ¶¶ 10-11.  Before the 2018-2019 athletic season officially began, Roe began hosting "captain's practices," despite instructions not to do so, in which she invited members of the girls' lacrosse team to practice without Plaintiff or another coach supervising.  ECF 134 ¶¶ 12-13; ECF 140-1 ¶¶ 12-13.  Conflicts between Plaintiff and Roe arose, and Roe's mother, Jane Doe, claimed that Plaintiff was bullying her daughter.  ECF 134 ¶ 17; ECF 140-1 ¶ 17.  There were at least two meetings between Roe and Plaintiff to address the conflict.  ECF 134 ¶ 18; ECF 140-1 ¶ 18.  Once the 2018-2019 athletic season began, Doe continued to make allegations to the School District about how Plaintiff was treating her daughter.  ECF 134 ¶ 20; ECF 140-1 ¶ 20.  Plaintiff asked C.B. West's Principal and Athletic Director for permission to remove Roe from the lacrosse team, but the request was denied.  ECF 134 ¶ 22; ECF 140-1 ¶ 22.

Multiple times throughout the athletic season, Plaintiff expressed to Central Bucks that she was experiencing a negative mental state and severe stress.  ECF 134 ¶ 24; ECF 140-1 ¶ 24.  The then-Director of Human Resources DiDio-Hauber encouraged Plaintiff to make use of the employee assistance program.  ECF 134 ¶ 24; ECF 140-1 ¶ 24.

In May 2019, Defendant launched an investigation into allegations that plaintiff was bullying Roe.  ECF 134 ¶ 25; ECF 140-1 ¶ 25.  The investigation was conducted by Superintendent

Lucabaugh between May 7 and May 13, 2019.  ECF 134 ¶ 26; ECF 140-1 ¶ 26.  As part of the investigation, Superintendent Lucabaugh interviewed members of the lacrosse team, as well as several parents, coaches, and teachers.  Id. The investigative report concluded that Plaintiff did not "engage in behavior rising to the level of bullying," but stated that "at times [plaintiff] may have wavered in maintaining a standard of utmost professionalism."  ECF 134 ¶ 27; ECF 140-1 ¶ 27, D-68, CBSD 227-228.  The report also stated that Plaintiff would undergo a year-end coaching evaluation.  ECF 134 ¶ 28; ECF 140-1 ¶ 28.

During the summer of 2019, the family of one lacrosse team member hosted a pool party at her home that was attended by other lacrosse team members.  ECF 134 ¶ 34; ECF 140-1 ¶ 34. Plaintiff was invited to the party and attended.  ECF 134 ¶ 35; ECF 140-1 ¶ 35.  Roe and her mother were not invited to the party. ECF 134 ¶ 34; ECF 140-1 ¶ 34.

For the 2019-2020 school year, Defendant hired Nicole Fisher, in lieu of reappointing Plaintiff, as head coach of the girls' lacrosse team.  ECF 134 ¶ 37; ECF 140-1 ¶ 37.  Nicole Fisher is female and was in her 20s at the time of hiring.  Id.

On October 30, 2019, a contentious incident involving Plaintiff and C.B. West Principal Thomas Donovan occurred in Principal Donovan's office.  ECF 134 ¶ 38; ECF 140-1 ¶ 38. Plaintiff took a leave of absence after this incident.  ECF 134 ¶ 39; ECF 140-1 ¶ 39.  After she was not reappointed as head lacrosse coach at C.B. West, Plaintiff was hired as head coach of the girls' lacrosse team at Harriton High School in the Lower Merion School District, a position she held until 2021.  ECF 134 ¶ 40; ECF 140-1 ¶ 40.

On May 13, 2020, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), which issued a Right to Sue letter on August 11, 2020.  ECF 134 ¶ 41; ECF 140-1 ¶ 41.  At the end of the 2020-2021 athletic season, Nicole Fisher stepped

down as head coach of the girls' lacrosse team at C.B. West.  ECF 134 ¶ 42; ECF 140-1 ¶ 42.  C.B. West posted a job posting for the head coach position, and Plaintiff applied for this position on September 22, 2021.  ECF 134 ¶ 43; ECF 140-1 ¶ 43.  The posting was closed on October 22, 2021, and then reposted on November 1, 2021 with a month-long extension of the application deadline.  ECF 134 ¶ 45; ECF 140-1 ¶ 45.  C.B. West Principal Donovan expressed to Superintendent Lucabaugh that Plaintiff "should not be considered" for the position.  ECF 134 ¶ 46; ECF 140-1 ¶ 46.

In November 2021, Principal Donovan went on medical leave and Lyndell Davis was appointed interim principal at C.B. West.  ECF 134 ¶ 47; ECF 140-1 ¶ 47.  On November 23, 2021, Plaintiff was interviewed for the head coach position by Athletic Director Henry Hunt, interim principal Lyndell Davis, and Lenape Middle School principal Geanine Saullo. ECF 134 ¶ 49; ECF 140-1 ¶ 49.  The same individuals also interviewed Kali Cook-Grisewood as another potential head coach candidate.  Id.  The interviewers put down scores for each candidate: Plaintiff received a total score of 193 and Ms. Cooke-Grisewood earning a total score of 203.  ECF 134 ¶ 50; ECF 140-1 ¶ 50.  On December 7, 2021, Plaintiff was informed that she was not selected for the head coach position.  ECF 134 ¶ 53; ECF 140-1 ¶ 53.  Later that same day, at a meeting between Plaintiff and interim principal Davis, Plaintiff received feedback regarding her interview: she was told that she spoke as though she were an assistant coach instead of a head coach, including when Plaintiff emphasized delegating tasks to her assistant coach.  ECF 134 ¶ 54; ECF 140-1 ¶ 54.

After Plaintiff did not receive the head coach position, she accepted a girls' lacrosse head coaching position at a private school in Pennsylvania.  ECF 134 ¶ 55; ECF 140-1 ¶ 55.  On December 8, 2021, Plaintiff emailed Director of Human Resources DiDio-Hauber that she felt that she had been discriminated against due to her filing her lawsuit against Defendant.  ECF 134 ¶ 56;

ECF 140-1 ¶ 56.  Plaintiff also stated that she believed that Defendant re-posted the job posting

after she applied explicitly to find a different candidate.  ECF 134 ¶ 56; ECF 140-1 ¶ 56.

On December 13, 2021, Plaintiff sent an e-mail to Assistant Superintendent Dr. Malone

and School Board President Dana Hunter providing her own belief that DiDio-Hauber "may be"

involved in discrimination and retaliation against Plaintiff arising from her lawsuit against

Defendant.  ECF 134 ¶ 58; ECF 140-1 ¶ 58.  On December 14, 2201, the Assistant Superintendent

began an investigation into Plaintiff's Title IX claims that she had been a victim of discrimination

and retaliation.  ECF 134 ¶ 59; ECF 140-1 ¶ 59.[3]  The Assistant Superintendent issued a report

concluding that there had been no retaliation or discrimination.  ECF 134 ¶ 60; ECF 140-1 ¶ 60.[4]

After the Assistant Superintendent issued his report, Plaintiff requested further investigation into

her retaliation complaint and Defendant hired an attorney in a private law firm to conduct the

investigation.  ECF 134 ¶ 62; ECF 140-1 ¶ 62.  The investigation concluded that no retaliation had

taken place and that "there is simply no evidence that the panel consisting of Dr. Davis, Mrs. Saullo

and Mr. Hunt made their recommendations based on [Plaintiff's] prior litigation history."  ECF

134 ¶ 63, Ex. D-6; ECF 140-1 ¶ 63.[5]

On June 19, 2022, Plaintiff filed an amended Charge of Discrimination against Defendant

with the EEOC and the Pennsylvania Human Relations Commission ("PHRC").  ECF 134 ¶ 64;

ECF 140-1 ¶ 64.  Plaintiff received a right-to-sue letter from the EEOC on September 6, 2022.

ECF 134 ¶ 65; ECF 140-1 ¶ 65.

---

[3] Plaintiff's Response disputes the use of the term "investigation" to describe the Assistant Superintendent's Report but does not offer a term to be used instead.  This dispute is not material for purposes of the summary judgment disposition.

[4] Plaintiff disputes the accuracy of the report.  ECF 140-1 ¶ 60.  This dispute is not material for purposes of the summary judgment disposition.

[5] Plaintiff disputes the accuracy of this investigation.  ECF 140-1 ¶ 3.  This dispute is not material for purposes of the summary judgment disposition.

## II.      PROCEDURAL HISTORY

On April 22, 2020, Plaintiff Cartee-Haring filed an initial Complaint in "Cartee-Haring I" stemming from Defendant's decision not to renew Plaintiff as head coach in 2019.  ECF 1.  On June 22, 2020, Defendant filed its Answer with Affirmative Defenses.  ECF 6.  On April 24, 2020, Plaintiff filed an Amended Complaint.  ECF 2.  On September 11, 2020, Plaintiff filed a Second Amended Complaint.  ECF 19.  On September 25, 2020, Defendant filed a Motion to Dismiss for Failure to State a Claim.  ECF 20.  On November 5, 2020, this Court granted in part and denied in part Defendant's Motion to Dismiss.  ECF 25.  On November 11, 2020, Plaintiff filed a Third Amended Complaint, bringing the following claims:

- Count I: Equal Pay Act ("EPA") violation,

- Count II: gender discrimination under Title VII,

- Count III: age discrimination under the Age Discrimination in Employment Act ("ADEA"), and

- Count IV: disability discrimination under the Americans with Disabilities Act ("ADA").

ECF 26.  This Court previously addressed Plaintiff's EPA claim (Count I) and denied cross motions for summary judgment with respect to Plaintiff's EPA claim and the EPA claim of the Marinello collective action in its May 15, 2024 Order and Memorandum (ECF 147), and therefore, the EPA claim is not discussed in this Memorandum.

As the docket shows, contentious discovery between the parties followed.  On October 7, 2022, Plaintiff filed a separate Complaint of retaliation and discrimination against Defendant in "Cartee-Haring II" stemming from Defendant's decision not to select Plaintiff for the head coach

position in 2021.  22-4019, ECF 1.  Plaintiff amended her Complaint on November 16, 2022.  22-4019, ECF 6.  The Amended Complaint alleges seven counts:

- Count I: Retaliation in Violation of Title VII

- Count II: Retaliation in Violation of Title IX

- Count III: Retaliation in Violation of the ADEA

- Count IV: Retaliation in Violation of the ADA

- Count V: Retaliation in Violation of the Equal Pay Act ("EPA")

- Count VI: Retaliation in Violation of the Pennsylvania Human Relations Act ("PHRA")

- Count VII: Age Discrimination in Violation of ADEA and PHRA

On January 4, 2023, this Court consolidated Cartee-Haring I (20-1995) and Cartee-Haring II (22-4019) for all further proceedings, and transferred all documents filed in Cartee-Haring II to the Cartee-Haring I docket.  22-4019, ECF 13.

On April 5, 2024, Defendant filed a Motion for Summary Judgment.  ECF 133.  On May 1, 2024, Plaintiff filed a Response in Opposition to Defendant's Motion for Summary Judgment.  ECF 140.  On May 14, Defendant filed a Reply.  ECF 144.

### III.   LEGAL STANDARD

#### A. Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is "material" if it might affect the outcome of the case under governing law.  Id.

7

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325.  After the moving party has met its initial burden, the adverse party's response must, by "citing to particular parts of materials in the record," show that a fact is "genuinely disputed."  Fed. R. Civ. P. 56(c)(1).  Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.  Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party.  Anderson, 477 U.S. at 255.

## IV.  DISCUSSION – CARTEE-HARING I CLAIMS

Plaintiff brings claims under Title VII, the ADEA, and the ADA for non-renewal of her position as lacrosse coach in 2019 following accusations that Plaintiff bullied one of the students on the lacrosse team (altogether, "Cartee-Haring I Claims").  ECF 26.  Plaintiff also claims that Defendant's decision to hire a different head coach when the coaching position became open again in 2021 was made in retaliation for Plaintiff's first lawsuit against Defendant or a discriminatory act based on age in violation of Title VII, Title IX, the ADEA, the ADA, the EPA, and PHRA (altogether, "Cartee-Haring II Claims").  22-4019, ECF 6.  This Court will begin with a discussion of the three Cartee-Haring I Claims.

**A. Title VII Gender Discrimination Claim**

  i.      Parties' Contentions

Defendant argues that Plaintiff's gender discrimination claim under Title VII fails where (1) there was no adverse employment action since Plaintiff's one year contract was simply not renewed, (2) a woman, Nicole Fisher, was hired to replace Plaintiff in the head lacrosse coach position, and (3) even if Plaintiff <u>did</u> make out a prima facie case of gender discrimination under the <u>McDonnell Douglas</u> burden shifting framework, Defendant has legitimate, nondiscriminatory reasons for not re-hiring Plaintiff as head coach, principally, Plaintiff's mishandling of the conflict between Plaintiff and a student-athlete, Rita Roe.  ECF 133-1 at 12-15.  Defendant argues that the Superintendent investigated Roe's allegations that Plaintiff bullied her, and released a report on December 4, 2019 stating that Plaintiff had not been bullying Roe, but that "at times [plaintiff] may have waivered in maintaining a standard of utmost professionalism."  ECF 133-1 at 17. Defendant also argues that it decided not to renew Plaintiff's contract after she attended a pool party hosted by a student-athlete, who invited all other lacrosse teammates except Roe and her mother.  ECFF 133-1 at 17.  Defendant argues that Plaintiff has provided no evidence to show that these reasons are pretextual, and therefore summary judgment is appropriate.  ECF 133-1 at 20.

Plaintiff responds that she suffered an adverse employment action whether the evidence is viewed as termination or non-renewal of her employment contract as coach.  ECF 140 at 4. Plaintiff argues that her termination gives rise to an inference of sex discrimination because male coaches have remained employed by Defendant even when they attended parties at the homes of players, which is one of the reasons proffered by Defendant for Plaintiff's termination.  Plaintiff also argues that Defendant's second reason for termination—that Plaintiff "lacked character"—is

pretextual because Plaintiff remained employed as an English teacher with Central Bucks, and if she really did lack character, she would have been fired as a teacher as well.  ECF 140 at 5.

     ii.    <u>Analysis</u>

Title VII prohibits employers from discriminating against individuals based on sex.  <u>See</u> 42 U.S.C. Section 2000e-2.  To prevail on a claim for gender discrimination under Title VII where there is no direct evidence of discrimination, a plaintiff must satisfy the three-step burden-shifting framework provided in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802-03 (1973). <u>Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Ed.</u>, 470 F.3d 535, 539 (3d Cir. 2006). First, a plaintiff must establish a prima facie case of gender discrimination.  <u>Id.</u>  To establish a prima facie case of gender discrimination, a plaintiff must demonstrate that (1) she is a member of a protected class; (2) she is qualified for the position; (3) she suffered an adverse employment action; and (4) either members of the opposite sex were treated more favorably, or the adverse employment action occurred under circumstances that could give rise to an inference of intentional gender discrimination.  <u>Burton v. Teleflex, Inc.</u>, 707 F.3d 417, 426 (3d Cir. 2013).

If a plaintiff succeeds in establishing a prima facie case, the burden of production then "shifts to the defendant to offer a legitimate non-discriminatory [justification] for the adverse employment action."  <u>Id.</u> (internal citations omitted).  This burden is "'relatively light' and is satisfied if the employer provides evidence, which, if true, would permit a conclusion that it took the adverse employment action for a non-discriminatory reason."  <u>Id.</u>  Furthermore, at this stage, "the defendant need not prove that the articulated reason actually motivated its conduct."  <u>Id.</u> (citing <u>Shellenberger v . Summit Bancorp, Inc.</u>, 318 F.3d 183, 189 (3d Cir. 2003)).  At the third step of the <u>McDonnell</u> Douglas framework, the burden of production shifts back to the plaintiff to

provide evidence from which a factfinder could reasonably infer that the employer's proffered justification is merely a pretext for actual discrimination.  Id.

This Court will begin with an analysis of the first step, the prima facie case.  Only the third and fourth elements of the prima facie case are in dispute.  Under the third prong of the prima facie analysis, Cartee-Haring must show that she was subject to an adverse employment action.  An "adverse employment action" under Title VII is "an action by an employer that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment."  Storey v. Burns Int'l Sec. Servs., 390 F.3d 760, 764 (3d Cir. 2004) (internal quotations omitted).  Such a "significant change in employment status" includes "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998).  In the Third Circuit, a "failure to rehire can constitute an adverse employment action."  Wilkerson v. New Media Tech. Charter Sch. Inc., 522 F.3d 315, 320 (3d Cir. 2008) (internal citations omitted).

Here, Plaintiff has sufficiently established that she was subject to an adverse employment action where Defendant failed to renew Plaintiff's coaching contract.  See Wilson v. Lock Haven Univ., 2011 WL 1375266, at *12 (M.D.Pa. March 22, 2011), report and recommendation adopted, 2011 WL 1375287 (M.D.Pa. Apr. 12, 2011), aff'd, 474 Fed. Appx. 74 (3d Cir. 2012) ("Since Lock Haven's decision to let plaintiff's employment contract expire constitutes a failure to rehire, plaintiff has sufficiently established that he was subject to an adverse employment action.").

Under the fourth prong of the prima facie analysis, Plaintiff must establish that either (1) members of the opposite sex were treated more favorably or (2) the adverse employment action occurred under circumstances that could give rise to an inference of intentional gender discrimination.  Plaintiff has not succeeded in showing that members of the opposite sex were

treated more favorably.  While Plaintiff argues that male coaches attended parties hosted by student athletes and retained their coaching positions, she does not point to any evidence that such male coaches were found, by school administrators, to have mishandled an escalating situation with a student athlete or that such male coaches were subject to an investigation for bullying a student athlete, like Plaintiff in this case.  See Wilson v. Lock Haven Univ., 474 Fed. Appx. 74, 76 (3d Cir. 2012) (affirming district court's finding that plaintiff failed to establish a prima facie case in Title VII race discrimination case where "[t]he comparisons [plaintiff] makes between himself and other coaches were unsupported by any record evidence, and thus, he has failed to demonstrate that other similarly situated individuals were treated any differently, regardless of race").  Plaintiff also has not succeeded in showing that the adverse employment action occurred under circumstances that could give rise to an inference of intentional gender discrimination where she was replaced by a female coach.

Even if Plaintiff did successfully establish a prima facie case of gender discrimination under Title VII, her claim fails under the remaining steps of the McDonnell Douglas burden-shifting framework.  Defendant has a legitimate, non-discriminatory reason for terminating Plaintiff.  It is clear from deposition testimony in the record and Central Bucks' investigative report into the allegations of bullying against Plaintiff that the decision not to reappoint Plaintiff as head coach was based on Plaintiff's mishandling of the conflict between her and Rita Roe (and her mother Doe) over a period of time--which is a legitimate nondiscriminatory reason for the termination--and not simply due to Plaintiff's attendance at a pool party hosted by a student athlete. See ECF 133-1 at 17, Ex D-85, 66:23-67:2, 67:22-68:9 (Dr. Lucabaugh testimony).[6]

---

[6] Dr. Lucabaugh testified, "[T]he situation had become so untenable between she [Plaintiff] and [Doe].  And I had asked Becky [Cartee-Haring] to just – just don't interact with her anymore. … And I saw Becky engaging.  And I saw [Doe] engaging.  And I saw the situation escalating.  And I said, don't interact with her anymore.  And she continued and continued and continued to interact with her [Doe] and it just escalated the situation.  And I also – and

Once a defendant offers a legitimate, nondiscriminatory reason for the adverse employment action, the plaintiff bears the burden of proving that defendant's reason for the adverse employment action is pretextual.  A plaintiff may establish pretext by (1) showing that the defendant's proffered reasons "are weak, incoherent, implausible, or so inconsistent that a reasonable factfinder could rationally find them unworthy of credence" or (2) providing "evidence that the employer's articulated reason was not merely wrong, but that it was so plainly wrong that it could not have been the employer's real reason."  <u>Sarullo v. U.S. Postal Serv.</u>, 352 F.3d 789, 800 (3d Cir. 2003).  Merely asserting that a defendant's reasons are pretextual is insufficient to establish that a defendant's articulated reasons for the allegedly discriminatory treatment were "unworthy of credence" or not the "real reason[s]."  <u>See</u> <u>Lock Haven</u>, 2011 WL 1375266, at *14 (finding that the plaintiff did not establish pretext where, "[o]n every matter that plaintiff claimed was racially discriminatory, he produced no evidence of actual discrimination, and in the section of his brief in opposition discussing pretext, he cited no record evidence or cases in support of his one-paragraph argument").

Plaintiff has not made a showing of pretext here.  Plaintiff argues that Defendant has articulated at least two inconsistent reasons for Plaintiff's termination that require a finding of pretext.  First, Plaintiff argues that male coaches, unlike the female Plaintiff, attended parties hosted by student athletes and retained their coaching position.  As previewed above, Plaintiff does not point to any evidence that such male coaches were subject to an investigation for bullying a student athlete that ultimately determined that the coach in question "at times [ ] may have waivered in maintaining a standard of utmost professionalism," like Plaintiff in this case.  Plaintiff's argument is therefore unavailing.  Second, Plaintiff argues that the Defendant's

---

I put this in my report.  The report exonerated her from bullying and I don't think she did bully anyone, but I also don't think she handled the situation in a way that could have caused all of this to go away."

argument that Central Bucks fired Plaintiff from the head coach position because she lacked character is implausible because if she really did lack character, she would have been fired as a teacher as well (which she was not). This argument is similarly unavailing where the conflicts between Plaintiff and the student athlete make clear that Defendant terminated Plaintiff because she was ill-suited for the role of head coach; Central Buck's view of Plaintiff's coaching skills has no bearing on her ability to teach. Plaintiff has not succeeded in establishing that Defendant' proffered reasons are pretextual. Therefore, summary judgment must be granted on Plaintiff's Title VII gender discrimination claim.


### B. ADEA Claim

#### i. Parties' Contentions

Plaintiff claims that Defendant did not renew Plaintiff as the girl's lacrosse coach after the 2018-2019 season due to her age, in violation of the ADEA. Defendant argues that, while it did hire a younger woman as the new head coach, Plaintiff fails to allege any other nonconclusory fact to support her age discrimination claim or provide any evidence that Defendant did so with discriminatory motives. ECF 133-1 at 20. Defendant argues that even if Plaintiff could establish a prima facie case of age discrimination, Defendant has established a legitimate, nondiscriminatory reason for not renewing her contract: Plaintiff's contentious relationship with student-athlete Roe and the decisions Plaintiff made concerning Roe. ECF 133-1 at 21. Defendant further argues that Plaintiff cannot show pretext where the only evidence that Plaintiff offers is that a 26-year-old woman was hired to replace Plaintiff (who was 44), and that a school administrator makes reference to the fact that he has known Plaintiff for over twenty years. ECF 133-1 at 22.

Plaintiff responds that Plaintiff, who was 45 years old during the relevant time period, was replaced as head coach by someone in their 20s.  ECF 140 at 6.  Plaintiff argues under the McDonnell Douglas burden-shifting framework that a reasonable jury could conclude that the Defendant's articulated business reasons are false.  Plaintiff does not elaborate further, rather, she relies on the assertions in her gender discrimination claim discussion.

   iii.  <u>Analysis</u>

The ADEA prohibits employers from "discharge[ing] any individual or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. Section 623(a)(1). ADEA claims in which the plaintiff relies on circumstantial evidence, like Title VII gender discrimination claims, are subject to the McDonnell Douglas burden-shifting framework.  <u>Willis v. UPMC Children's Hosp. of Pittsburgh</u>, 808 F.3d 638, 644 (3d Cir. 2015).

To succeed on a claim of age discrimination under the ADEA, a plaintiff must first establish that she (1) was over the age of 40; (2) was qualified for the position she sought to retain or attain; (3) suffered an adverse employment action; and (4) was ultimately replaced by a younger person so as to support an inference of a discriminatory motive.  <u>Id.</u>  Once she establishes a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the employer's action.  <u>Fuentes v. Perskie</u>, 32 F.3d 759, 763 (3d Cir. 1994).  "The employer need not prove that the tendered reason actually motivated its behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff."  <u>Id.</u>  "Once the employer answers its relatively light burden by articulating a legitimate reason for the unfavorable employment decision, the burden of production rebounds

to the plaintiff, who must now show by a preponderance of the evidence that the employer's explanation is pretextual (thus meeting the plaintiff's burden of persuasion)." Id.

This Court finds that Plaintiff adequately establishes a prima facie case of gender discrimination. As this Court found above with respect to Plaintiff's Title VII claim, Plaintiff suffered an adverse employment action when Defendant did not renew her coaching contract. Plaintiff is over the age of forty, and Defendant does not dispute that she was qualified for the position she sought and ultimately replaced by a younger person.

As above, Defendant has offered a legitimate, nondiscriminatory reason for its actions in choosing not to rehire Plaintiff due to her contentious relationship with Roe throughout the 2018-2019 lacrosse season and Plaintiff's mishandling of her conflict with Roe.

The burden next shifts to Plaintiff to show that Defendant's stated reason for nonrenewal is pretextual. A plaintiff can show pretext by either (1) pointing to evidence that would allow a factfinder to disbelieve the employer's reason for the adverse employment action or (2) pointing to evidence that would allow a factfinder to believe that an invidious discriminatory reason was "more likely than not a motivating or determinative cause" of the employer's action. Willis, 808 F.3d at 644-645 (citing Fuentes, 32 F.3d at 762-764).

Plaintiff cannot meet her burden of showing pretext. In her opposition brief, Plaintiff merely provides conclusory allegations that Defendant did not rehire her due to her age, which is insufficient to establish pretext under either of the two frameworks. See Willis, 808 F.3d at 647 ("[Plaintiff]'s attempt to cast [Defendant]'s articulated reasons as pretext are unsuccessful because she does not point to evidence that demonstrates [Defendant] did not in fact rely on its articulated reasons when terminating her employment."). Merely stating that Plaintiff was replaced by a

woman who was 26 years old, as Plaintiff does, is insufficient.  As such, this Court must grant summary judgment on Plaintiff's ADEA claim.

### C.  ADA Claim

####    i.    Parties' Contentions

Plaintiff claims that she was not reappointed as head coach due to a perceived disability in violation of the ADA.  Defendant argues that Plaintiff has failed to prove that Defendant regarded her as having any disability under the ADA or that any such disability was the reason that she was not rehired as lacrosse coach.  ECF 133-1 at 23.  Plaintiff states that she suffered from depression and migraines, and the Director of Human Resources encouraged Plaintiff to use employee assistance programs after having "experienced loss."  ECF 133-1 at 24.  Plaintiff also sent an e-mail to the Director of Human Resources in which she stated that she was under severe stress, was behind on her classwork, and was in great physical pain, requesting advice on how to handle the situation.  ECF 133-1 at 24.

Defendant argues that this evidence does not prove that Defendant regarded Plaintiff as having a disability, and at most it demonstrates that Defendant was aware that Plaintiff was under stress, which is not a disability recognized by the ADA.

Plaintiff argues, without adequate citation to case law, that her mental condition resulting from her experiences as head lacrosse coach substantially affected her major life activities of concentrating, sleeping, interacting with others, and her enjoyment of life, and this renders her "disabled" within the meaning of the ADA.  ECF 140 at 7.

####    ii.    Analysis

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application

procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. Section 12112(a). To establish a prima facie case of disability discrimination under the ADA, a Plaintiff must show that she (1) is disabled within the meaning of the ADA, (2) is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation from the employer, and (3) suffered an adverse employment action as a result of discrimination based on her disability. Gaul v. Lucent Tech. Inc., 134 F.3d 576, 680 (3d Cir. 1998). The ADA defines "disability" as follows:

> (A) A physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment…An individual meets the requirements of 'being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment limits or is perceived to limit a major life activity.

42 U.S.C. Section 12102. Under the ADA, an impairment "substantially limits" a major life activity if the person "is significantly restricted as to the condition(s), manner, and duration under which she can perform a major life activity as compared to the condition(s), manner, and duration under which an average person in the general population can perform the same major life activity." Ashton v. Am. Tel. & Tel. Co., 225 Fed. Appx. 61, 66 (3d Cir. 2007) (citing 29 C.F.R. Section 1630.2(j)(1)).

Plaintiff's ADA claim fails because she has not made the threshold showing that she is disabled within the meaning of the ADA. Plaintiff has not pointed to any medical records evincing a disability. In support of her assertions of disability, Plaintiff argues, without any citations to the record, that her "mental condition resulting from her experiences as the head lacrosse coach substantially affected her major life activities of concentrating, sleeping, interacting with others,

and her enjoyment of life" and that "[t]his rendered her 'disabled' within the meaning of the ADA." ECF 140 at 7. A review of the record shows that Plaintiff suffered from stress stemming from her contentious relationship with the student athlete.[7] Generalized stress, however, does not rise to the level of "disabled" within the meaning of the ADA. See Ashton v. American Tel. & Tel. Co., 225 Fed. Appx. 61, 66 (3d Cir. 2007) (affirming grant of summary judgment where employee's acute stress disorder and generalized anxiety did not substantially limit the major life activities of thinking or working so as to constitute a disability under the ADA where the impairment was temporary, and employee did not suffer any negative long-term or permanent impact from the impairment).

To the extent Plaintiff argues that Defendant "regarded" her as having a disability under the ADA, this too fails. "To be 'disabled' under the 'regarded as' portion of the ADA's definition of disability, [Plaintiff] must demonstrate either that: (i) although she had no impairment at all, [Defendant] erroneously believed that she had an impairment that substantially limited major life activities; or (ii) she had a non-limiting impairment that [Defendant] mistakenly believed limited a major life activity." Parker v. Port Authority of Allegheny Cty., 90 Fed. Appx. 600, 603 (3d Cir. 2004). "In either case, the definition of 'substantially limits' remains the same as it does in other parts of the statute." Id.

Here, Director of Human Resources DiDio-Hauber's statement encouraging Plaintiff to use employee assistance programs does not prove that Central Bucks regarded Plaintiff as having a disability. Defendant is correct that, at most, the evidence shows that Defendant was aware of Plaintiff's stress, which for the reasons discussed above, is not actionable under the ADA. Since

---

[7] Plaintiff stated, "I felt that [Director of Human Resources DiDio-Hauber] was insinuating I had some sort of disability or mental issue instead of really tackling what the issue was, which was this constant harassment of this family [Rita Roe and her mother] and the District to me." ECF 133-1 at 24; Ex. D-89, 79:13-15.

Plaintiff has not proved that she was disabled under the ADA, she cannot establish a prima facie case of discrimination, and her ADA claim must be dismissed.

## V.    DISCUSSION – CARTEE-HARING II CLAIMS

Plaintiff's Cartee-Haring II claims stem from Defendant's decision to not hire Plaintiff as head girls' lacrosse coach for the 2021-2022 season.  The lawsuit alleges seven claims: six claims of retaliation in violation of Title VII, Title IX, the ADEA, the ADA, the EPA, and the PHRA, and one claim of age discrimination in violation of the ADEA and the PHRA.  22-4019, ECF 6.[8]

### A.  Title VII Retaliation Claim

#### i.    Parties' Contentions

Plaintiff claims that the decision to not hire her as head coach for the 2021-2022 season was in retaliation for her filing the Cartee-Haring I lawsuit.  Defendant argues that its decisions to hire a different head coach was not made in retaliation for Plaintiff's first lawsuit and did not constitute an adverse employment action.  Defendant argues that Plaintiff filed her first lawsuit on April 22, 2020 and applied for the head coach job on September 22, 2021, a difference of 17 months which is too long to establish the causal link required for a retaliation claim.  ECF 133-1 at 28.  Defendant argues that even if Plaintiff could establish an adverse employment action and causal connection, Plaintiff cannot overcome Defendant's legitimate, non-discriminatory reasons for not hiring Plaintiff: the job interviews were performed by three people who asked the candidates questions and scored their answers and Cook-Grisewood (the coach ultimately hired in

---

[8] While Defendant's Motion for Summary Judgment addresses Plaintiff's Title VII, Title IX, ADEA, ADA, EPA, and PHRA retaliation claims, Plaintiff's Response in Opposition addresses only the Title VII, ADEA and ADA retaliation claims.  See ECF 140 at 8-11.  Plaintiff abandoned her Title IX, EPA, and PHRA claims by failing to address them in her opposition brief, and this Court will grant summary judgment on these claims.  See, e.g., Carroll v. Lancaster Cnty., 301 F. Supp. 3d 486, 511, 512 (E.D.Pa. 2018) (deeming claims and arguments abandoned where plaintiff failed to respond to them in opposition to summary judgment and therefore granting summary judgment); Aubrecht v. Pa. State Police, 2009 WL 793634, at *9-10 (W.D. Pa. Aug. 11, 2006) (granting summary judgment as to plaintiff's claim not addressed in plaintiff's brief in opposition).

lieu of Plaintiff) scored higher than Plaintiff.  ECF 133-1 at 29.  Defendant argues that Plaintiff cannot meet the burden of proving that the Defendant's stated reasons are pretextual, and therefore summary judgment is appropriate for the retaliation claims.  ECF 133-1 at 30-32.

In response, Plaintiff argues that (1) she engaged in protected activity by filing a Charge of Discrimination and lawsuit averring violations of the statutes, (2) she then suffered an adverse employment action by not being hired for the head coach position in 2021, and (3) she adduced evidence sufficient to raise the inference that her protected activity was likely the cause of her adverse employment action because her lawsuit against Defendant was already in full swing when she was applying for the head coaching job in Fall 2021.  ECF 140 at 9.  Plaintiff argues that Defendant's articulated business reason for giving the head coach position to someone else—that Plaintiff was better suited to be an assistant coach rather than a head coach—is implausible since Plaintiff had years of successful coaching experience as a head coach and the younger woman who got the job did not benefit from such experience.  ECF 140 at 11.

    ii.   <u>Analysis</u>

To establish a prima facie case of unlawful retaliation under Title VII, Plaintiff must demonstrate that "(1) she engaged in conduct protected by Title VII; (2) the employer took adverse action against her; and (3) a causal link exists between her protected conduct and the employer's adverse action."  <u>Charlton v. Paramus Bd. of Educ.</u>, 25 F.3d 194, 201 (3d Cir. 1994).  Title VII retaliation claims are evaluated under the <u>McDonnell Douglas</u> burden-shifting framework, described previously at length in this Memorandum.  <u>Carvalho-Grevious v. Del. State Univ.</u>, 851 F.3d 249, 257 (3d Cir. 2017).

The parties do not dispute that Plaintiff engaged in conduct protected by Title VII by filing a lawsuit (the first prong of the prima facie analysis).  Defendant does dispute, however, that it

took an adverse action against Plaintiff (the second prong) and that a causal link exists between her protected conduct and the employer's adverse action (the third prong).  This Court will address each in turn.

With respect to the second prong, "a plaintiff claiming retaliation under Title VII must show that a reasonable employee would have found the alleged retaliatory actions 'materially adverse' in that they 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'"  Moore v. City of Philadelphia, 461 F.3d 331, 341 (3d Cir. 2006).  Here, a reasonable jury could conclude that Defendant took action against Plaintiff—not hiring her for the head coaching position—that might well dissuade a reasonable teacher from filing or supporting a charge of discrimination.  As such, the second prong is met.

With respect to the third prong, a causal connection, Third Circuit case law "has focused on two main factors in finding the causal link necessary for retaliation: timing and evidence of ongoing antagonism."  Abramson v. William Paterson College of New Jersey, 260 F.3d 265, 288 (3d Cir. 2001).  "While temporal proximity can be sufficient to demonstrate a causal link, the timing must be 'unusually suggestive' of a retaliatory motive before a causal link will be inferred."  Ward v. MBNA America, 570 Fed. Appx. 143, 145 (3d Cir. 2014) (finding six-month proximity, without more, insufficient to establish a causal link).  "In the absence of such a close temporal proximity, we consider the circumstances as a whole, including any intervening antagonism by the employer, inconsistencies in the reasons the employer gives for its adverse action, and any other evidence suggesting that the employer had a retaliatory animus when taking the adverse action."  Daniels v. School Dist. of Philadelphia, 776 F.3d 181, 196 (3d Cir. 2015).

Here, the record does not contain proof of a causal connection sufficient to establish a prima facie case of retaliation.  Temporal proximity does not exist.  Seventeen months lapsed

between the time of the protected activity and the time of the alleged retaliation: Plaintiff filed her first lawsuit on April 22, 2020 and applied for the head coach position on September 22, 2021. This time span is too long to establish a causal link.  See Moody v. Atl. City Bd. of Educ., 870 F.3d 206, 221 (3d Cir. 2017) ("An inference of 'unduly suggestive' temporal proximity begins to dissipate where there is a gap of three months or more between the protected activity and the adverse action"); see also Collings v. Kimberly-Clark Pa., LLC, 247 F. Supp. 3d 571, 599 (E.D.Pa. 2017) (finding that an eighteen-month span of time between the protected action and the claimed adverse action did not establish a causal link where, "[a]s Defendant correctly points out, 'days are suggestive, months are not.'  Temporal proximity on the order of years is certainly not per se suggestive of a retaliatory causal link.").

Plaintiff similarly has not shown evidence of ongoing antagonism, inconsistencies in the reasons Defendant gives for its purportedly adverse action, or circumstantial evidence probative of a causal connection.  As purported causal connection evidence, Plaintiff argues that Defendant did not hire Plaintiff when she was the only applicant when the head coach position was first posted, instead, Defendant re-posted the position and ultimately interviewed both Plaintiff and a second candidate who responded to the second posting.  Plaintiff asserts, without identifying any supportive evidence in the record, that Defendant interviewed Plaintiff for the position "to make it appear that the District was considering Cartee-Haring for the position, and not retaliating against her" even though "the Superintendent had made the decision in agreement with Principal Donovan that Cartee-Haring would not actually be considered the position."  ECF 140 at 10.  These assertions do not establish a causal connection where the record shows that (1) it was common practice to repost coaching positions when there are an insufficient number of applicants,[9] and (2)

---

[9] See Cartee-Haring Oct. 13, 2023 Tran., Ex. D-89 at 249:5-12.

Plaintiff and the other candidate were both interviewed by a panel of three interviewers who found that Plaintiff was qualified for the position but ultimately scored slightly lower than the other candidate.

Furthermore, to the extent Plaintiff believes the conversation between Principal Donovan and Superintendent Lucabaugh in which Principal Donovan told Superintendent Lucabaugh that he did not intend to interview Plaintiff for the head coaching position is evidence of ongoing antagonism, this is unavailing. Plaintiff has not offered evidence that either Principal Donovan or Superintendent Lucabaugh were involved in the head coach interviewing process—or indeed that they ever spoke to the three interviewers about the possibility of hiring Plaintiff.

Since Plaintiff has not met all three prongs of a prima facie retaliation claim, her claim does not withstand summary judgment.

### B. ADEA and ADA Retaliation Claims

i.    Parties' Contentions

Plaintiff claims that she was not hired as head coach in retaliation for filing her charge of age discrimination under the ADEA. Defendant argues, as above, that Plaintiff cannot demonstrate an adverse action or causal relationship between the filing of the original lawsuit in April 2020 and the recommendation to hire Cooke-Grisewood (the other interviewed candidate) rather than Plaintiff in December 2021. ECF 133-1 at 34. Defendant argues that even if Plaintiff can establish a prima facie case of retaliation under the ADEA, Defendant has demonstrated non-retaliatory reasons for not hiring Plaintiff and Plaintiff cannot prove that they were pretextual. ECF 133-1 at 34.

Plaintiff also claims that Defendant's decision not to hire her as head coach in 2021 was retaliation for her filing a charge of discrimination with the EEOC for violation of the ADA.

Defendant argues that, once again, Plaintiff cannot prove that Defendant took any adverse action against her and cannot prove any causal relationship between the filing of the original lawsuit and Defendant's decision to not hire her as head coach due to the time gap between these events, and Plaintiff has adduced no evidence that Defendant's legitimate, non-retaliatory reasons are pretextual.  ECF 133-1 at 35.

        ii.     <u>Analysis</u>

Plaintiff's ADEA and ADA retaliation claims are subject to the same standard for establishing a Title VII retaliation claim discussed above, namely, the <u>McDonnell Douglas</u> burden-shifting framework.[10]  This Court's analysis with respect to Plaintiff's ADEA and ADA claims is brief because the same logic for granting summary judgment on Plaintiff's Title VII retaliation claim applies to her ADEA and ADA retaliation claims: Plaintiff cannot establish a causal relationship between her protected activity and Defendant's decision not to hire Plaintiff as head coach.  This Court incorporates by reference its analysis of Plaintiff's Title VII retaliation claim.

### C.  ADEA and PHRA Age Discrimination Claims

Plaintiff claims that Defendant did not hire the Plaintiff as lacrosse head coach in 2021-2022 due to her age in violation of the ADEA and the PHRA.  Defendant reiterates its <u>McDonnell Douglas</u> burden-shifting framework arguments above for these claims.  ECF 133-1 at 37.

Plaintiff offers no response to Defendant's arguments with respect to the PHRA claim. Plaintiff offers very little by way of argument with respect to the ADEA claim, asserting only, in

---

[10] <u>See</u> <u>Canada v. Samuel Grossi & Sons, Inc.</u>, 49 F.4th 340, 346 (3d Cir. 2022) (establishing that ADA and Title VII retaliation claims are controlled by the <u>McDonnell Douglas</u> burden shifting framework, and under the first step of that framework, a plaintiff "must establish a prima facie case by showing (1) [that she engaged in] protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action"); <u>see also</u> <u>Daniels v. School Dist. of Philadelphia</u>, 776, F.3d 181 (3d Cir. 2015) (addressing ADEA and Title VII retaliation claims "together as the circumstances of this case do not require that we make differing analyses" where both claims are subject to the <u>McDonnell Douglas</u> burden-shifting framework).

a single line, that Cartee-Haring has established a prima facie case of discrimination in Defendant's decision not to hire Plaintiff for the 2021 coaching position.  ECF 140 at 11.[11]  This unsupported assertion is insufficient to establish a prima facie case of discrimination, let alone establish the remaining required elements under the <u>McDonnell Douglas</u> framework, and therefore, summary judgment is granted on Plaintiff's ADEA claim.

## VI.    CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted.  An appropriate order follows.

O:\CIVIL 20\20-1995 Cartee-Haring v Central Bucks Sch\20cv1995 Cartee Haring MSJ Memorandum.docx

---

[11] Confusingly, Plaintiff's Response brief opposes summary judgment with respect to purported claims under Title VII, the ADEA, and the ADA for Defendant's refusal to hire her for the head coach position in 2021.  ECF 140 at 11.  Yet Plaintiff does not in fact bring claims under Title VII and the ADA with respect to the denial of the 2021 coach position in her Amended Complaint, and therefore, Plaintiff's opposition with respect to these imaginary claims will be disregarded.  <u>See</u> 22-4019, ECF 6, Amended Complaint (bringing age discrimination claims under ADEA and PHRA only).  Plaintiff does not address, even summarily, Defendant's Motion for Summary Judgment with respect to her PHRA age discrimination claim in her Response brief, and therefore, summary judgment will be granted on this claim.