IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **REBECCA CARTEE-HARING**<br><br>v.<br><br>**CENTRAL BUCKS SCHOOL DISTRICT,** *Defendant*. | **CIVIL ACTION NO. 20-1995** |
| **DAWN MARINELLO,** *on behalf of herself and similarly situated plaintiffs*, *Plaintiff*,<br><br>v.<br><br>**CENTRAL BUCKS SCHOOL DISTRICT,** *Defendant*. | **CIVIL ACTION NO. 21-2587** |

## MEMORANDUM RE: AWARD OF ATTORNEYS' FEES AND COSTS

**Baylson, J.**                                                                                                   **July 21, 2025**

Following the successful second trial of this case, Plaintiffs Dawn Marinello and Rebecca Cartee-Haring, through their attorney, Edward Mazurek, have filed a Motion for Award of Attorneys' Fees and Costs (Civil Action No. 21-2587, ECF 471, 483; Civil Action No. 20-1995, ECF 437, 449). The Equal Pay Act's damages provision requires that the Court, "in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).

Defendant opposed the Motion, pointing out several errors, or matters overlooked by Plaintiffs' Counsel. ECF 475.[1] In view of Defendant's opposition, the Court entered an Order on July 7, 2025, ECF 479, allowing Plaintiffs to file an amended petition by July 14, 2025, which was the deadline for Plaintiffs to file a reply. Although Plaintiffs filed a supplemental petition, ECF

---

[1] ECF references are to the docket in Marinello v. Central Bucks School District, No. 21-2587.

483, Mr. Mazurek did not take the opportunity to file an amended petition.

The Court generally agrees with Plaintiffs that any attorney undertaking an Equal Pay Act case on a contingency basis is embarking on a little known but important statute and has significant burdens of proof to satisfy. Further, the statute provides for several affirmative defenses which, if adopted by the jury, would negate any damage award to a plaintiff. See 29 U.S.C. § 206(d)(1). However, the Court in its award of fees and costs must consider Plaintiffs' Counsel's many errors and mistakes, as pointed out by Defendant in its response.

Accordingly, for the following reasons, the Court will reject Plaintiffs' requested lodestar multiplier, will reduce the lodestar amount to reflect what the Court in its discretion considers to be a reasonable fee, and will award most of Plaintiffs' costs.

I. **RELEVANT PROCEDURAL HISTORY**

There have been two trials of these cases. At an early point in the case, on February 28, 2022, Plaintiffs moved for certification of a collective action consisting of many female teachers in the Defendant school district. ECF 27. After an evidentiary hearing on June 14, 2022, in which the two Plaintiffs and several other female teachers testified, the Court issued an Order granting final certification of the collective action, finding that the witnesses were credible. ECF 55. As the case progressed, circumstances indicated that this Order was premature and probably issued in error.[2]

After extensive discovery and other pretrial disputes, the Court eventually denied both parties' motions for summary judgment on Plaintiffs' Equal Pay Act claims, ECF 178–79, and scheduled the case for trial. Shortly before the trial started, Plaintiffs' Counsel asserted a very novel theory for his presentation of evidence, insisting that every female teacher—which

---

[2] The Court will not consider this fact in its award of attorneys' fees because Plaintiffs' Counsel deserves credit for bringing this Motion early in the case and persuading the Court to approve the collective action.

encompassed other professional staff such as nurses, school psychologists, etc.— employed by Defendant were "comparators" with every male teacher and professional staff employed by Defendant. ECF 255. Plaintiffs did not have any precedent to support this contention as a valid way to proceed under the Equal Pay Act. However, rather than further postpone trial, after several admonitions the Court eventually acceded to Plaintiffs' request that the trial should proceed in that manner. Tr. (7/23/2024), ECF 294, at 5:15–21.

Prior to trial, the Court insisted that counsel prepare a "chart," admissible under Federal Rule of Evidence 1006, which showed the compensation paid to all the teachers employed by the district, to be presented to the jury at trial. The Court appointed a Special Master, Shira Yoshor, Esquire, to work with counsel to prepare an accurate chart, which was accomplished with her valuable assistance. ECF 283. The chart was admitted into evidence during trial. Tr. (7/24/2024), ECF 295, at 98:24–99:10. After five trial days, the jury was unable to agree upon a unanimous verdict and the Court declared a mistrial. ECF 305.

As counsel began to prepare for a second trial, the Court issued an Order decertifying the collective action on August 1, 2024. ECF 313. Disagreeing with the Court's Order, Plaintiffs' Counsel filed a new case joining most of the former opt-in schoolteachers employed by the district as plaintiffs. See Jakubik v. Gibson, Case No. 25-33. The Court immediately dismissed without prejudice all of the joined Plaintiffs as improper, leaving only the first-named Plaintiff, Karyn Jakubik, to proceed on her individual claims. Jakubik, ECF 3. Plaintiffs' Counsel elected to stand on his original Complaint rather than file an Amended Complaint. Id., ECF 5.

Prior to the second trial of the Marinello action, the Court entered an Order limiting Plaintiffs to two male comparators for each Plaintiff and ordered that only teachers of "academic" subjects could be considered as comparators, rejecting Plaintiffs' position that "all" teachers and

3

administrative staff could be included. ECF 326, 331.

The second trial began on May 5, 2025, and lasted three days. The jury unanimously found in favor of both Plaintiffs and against Defendant. ECF 453. The Court has since ruled on all other post-trial motions. ECF 484–85. The instant Motion for Award of Attorneys' Fees and Costs is the final order in this case.

## II. DISCUSSION – PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

Plaintiffs' Counsel asserts that Plaintiffs should receive an award of counsel fees of $2,625.00 per hour, which is three and a half times the hourly rate that Plaintiffs' counsel would have charged for this case ($750) but for the contingent fee agreement. Plaintiffs' Counsel requests a total of $2,756,662.50 for work on this case.

Plaintiffs' Counsel points to Paragraph 3.1 of his engagement agreements with Rebecca Cartee-Haring and Dawn Marinello, each of which set a different amount for the attorney's fee: Rebecca Cartee-Haring's engagement agreement sets the amount at the greater of two and a half times the $750 hourly rate multiplied by the number of hours spent or thirty-five percent (35%) of the gross value of any recovery, whereas Dawn Marinello's engagement agreement increases those numbers to three and a half times the $750 hourly rate or forty percent (40%) of the gross value of any recovery. Exs. A & B to Mot., ECF 471-1, ¶ 3.1; ECF 471-2, ¶ 3.1. Yet Plaintiffs' fee petition asks for an across-the-board 3.5 multiplier of Counsel's hourly rate, and Plaintiffs' Counsel did not amend his petition when given the opportunity.

The Court rejects Plaintiffs' Counsel's request for a contingency multiplier of 3.5 times his hourly rate and reduces the fee award to $516,415.26, as explained below.[3]

---

[3] The Court will disregard Paragraph 3.1 of the engagement agreements which it views as unconscionable, particularly applying the lodestar multiplier of 3.5 (or 2.5) regardless of the amount of recovery and/or Counsel's effectiveness in prosecuting the case. Pa.R.P.C. 1.5(a) ("A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee."). The Court further views it as unconscionable that Plaintiffs Rebecca Cartee-Haring and

4

**A. The Court's Fee Award**

Plaintiffs are entitled to an award of reasonable attorney fees, as they are clearly prevailing parties, having achieved a verdict in their favor in the second trial. Farrar v. Hobby, 506 U.S. 103, 109 (1992). Calculating an award of attorneys' fees and costs has long been regarded as a matter of discretion for the trial court, so long as the trial court gives reasonably specific explanations for adjusting the fee award. Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 558 (2010) ("Determining a 'reasonable attorney's fee' is a matter that is committed to the sound discretion of a trial judge[.]"); see also Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990) ("[T]he district court has the discretion to make certain adjustments to the lodestar."). It is the district court's duty to take an active role in calculating a reasonable fee under the FLSA's fee-shifting provision. Loughner v. Univ. of Pittsburgh, 260 F.3d 173, 178 (3d Cir. 2001).

The Court has extensively reviewed Plaintiffs' fee petition, Defendant's response, Plaintiffs' reply, and Plaintiffs' supplemental fee petition. After five years of experience with counsel in this case, the Court determines in its discretion that a reasonable fee award is the average between the total lodestar amount, excluding Plaintiffs' Counsel's excessive 3.5 multiplier, and the total amount based on 40% recovery of the damages awarded.

*Total Lodestar Amount* – Plaintiffs' Counsel represents that he worked a total of 1,204.3 hours through the filing of the fee petition, Ex. D to Mot. (ECF 473), and an additional 17.9 hours preparing responses and replies to post-trial motions, ECF 483, for a total of **1,222.2 hours** worked on this case. The Court is prepared to accept this number in full as Plaintiffs' Counsel's total hours

---

Dawn Marinello should be responsible for Counsel's delays and inefficiencies, Counsel's disregard of Court Orders, and for time worked litigating a failed collective action which included claims of hundreds of plaintiffs other than those of Ms. Cartee-Haring and Ms. Marinello. Much time was expended briefing issues regarding the non-responsive opt-in plaintiffs, discovery issues with opt-in plaintiffs, and other miscellaneous matters with no bearing on the merits of Ms. Cartee-Haring's or Ms. Marinello's claims.

5

worked on this case, notwithstanding Defendant's objections. Mr. Mazurek is a credible attorney with much experience in this Court and in the state courts. It is difficult to represent clients in a case of this nature where there are absolute defenses, and some novel legal issues. Although the Court does not agree that Mr. Mazurek handled all these issues as well as he could and should have, the Court does not wish to penalize his clients in the recovery of attorneys' fees based on the number of hours worked because of mistakes or errors of judgment that Mr. Mazurek made, as recounted in this memorandum. The Court also accepts Counsel's **$750 hourly rate** as reasonable for this type of litigation, as reflected in the declarations submitted as exhibits. See, e.g., Decl. of Sidney Gold, Esquire, ECF 482-2, ¶ 18; Loughner, 260 F.3d at 180 ("Generally, a reasonable hourly rate is calculated according to the prevailing market rates in the relevant community."). Multiplying the total number of hours worked by the hourly rate yields **$916,650**.

*Total Percentage Amount* – Per the amended judgment, ECF 485, Plaintiffs Marinello and Cartee-Haring were cumulatively awarded $290,451.30. 40% of the gross recovery is **$116,180.52**.

*Average of the lodestar and percentage* – An averaging of the lodestar and the percentage recovery equals **$516,415.26**, which the Court calculated by adding $916,650 and $116,180.52, and dividing the result by two.

Accordingly, the Court will award Plaintiffs $516,415.26 in attorneys' fees.

B. **The Court's Reasons For Reducing The Fee Award**

In arriving at this blended methodology for calculating the fee award, the Court considered several well-established legal principles on fee-shifting statutes, Counsel's advocacy throughout the course of this litigation, and ultimately applied its discretion to reduce the lodestar amount. In the first instance, as to Plaintiffs' request for a 3.5 (or 3.0) multiplier based on contingent risk, the Supreme Court has time-and-again cautioned against enhancing the lodestar amount absent

6

exceptional circumstances, Perdue, 559 U.S. at 552–58, and has specifically disallowed a multiplier based on contingency risk, Goodman v. Pennsylvania Tpk. Comm'n, 293 F.3d 655, 677 (3d Cir. 2002) ("In City of Burlington v. Dague, 505 U.S. 557 (1992), the Supreme Court held that contingency multipliers are not permitted for fees awarded pursuant to fee shifting statutes.").

The Court considered ample Supreme Court and Third Circuit precedent on deviating from the total lodestar recovery in statutory fee shifting cases, including the presumption that the lodestar amount is reasonable. See Purdue, 559 U.S. at 552–58; Augustyn v. Wall Twp. Bd. of Educ., 139 F.4th 252, 259–60 (3d Cir. 2025); Rode, 892 F.2d at 1183–85. The Court also considered the Third Circuit's factors for assessing the reasonableness of attorneys' fees under the percentage-of-recovery method, as discussed in Gunter v. Ridgewood Energy Corp., 223 F.3d 190, 195 n.1 (3d Cir. 2000) and In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions, 148 F.3d 283, 336–40 (3d Cir. 1998) (noting also that "it is sensible for a court to use a second method of fee approval to cross check its initial fee calculation" (citation modified)):

> (1) the size of the fund created and the number of beneficiaries; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; (7) the awards in similar cases; (8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations; (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained; and (10) any innovative terms of settlement.

Applying this binding precedent and the above-referenced factors, several of the factors favor a complete lodestar award, as Plaintiffs' Counsel persisted over five years of tough litigation in prosecuting this employment discrimination case to judgment, ultimately resulting in an award for his clients. Due to the contingent nature of the fee arrangement, Plaintiffs' Counsel also faced

7

a serious risk of nonpayment, particularly given the uncertainties of Equal Pay Act cases in this Circuit. The Court is also cognizant of Plaintiffs' position on the law, ECF 482 at 1–2, and agrees that in awarding attorneys' fees under the Equal Pay Act—and other fee-shifting statutes—the function of attorneys' fees is to make the Plaintiffs whole, so that whatever fees they are contractually obligated to pay to their counsel will, in fact, by paid by the defendant. See Kerzich v. Cnty. of Tuolumne, 335 F. Supp. 3d 1179, 1188 (E.D. Cal. 2018) ("The point of a fee-shifting provision in a statute like the FLSA is to ensure that the burden of enforcing federal labor law does not fall on the employees, and to put the burden on employers to ensure they promptly pay what is legally owed without plaintiffs being saddled with attorneys' fees.").

But in reviewing the fee petition, the Court must also consider the reality of what transpired in this Court during the five years that these cases have been pending. While Plaintiffs' Counsel was impressive in the way he promptly sought certification of a collective action and similarly impressive in the way he cross-examined defense witnesses, Plaintiffs' Counsel had a series of missteps that caused extensive delays, drove up costs, and hindered judgment in the first trial. The Court detailed many of these missteps in its memorandum in Jakubik v. Gibson, No. 25-cv-33, 2025 WL 817858 (E.D. Pa. Mar. 12, 2025), and will only briefly recount them here:

- Plaintiffs' Counsel failed to manage discovery efficiently with the hundreds of former opt-in Plaintiffs, requiring several motions to compel the opt-in Plaintiffs to cooperate with discovery. See Jakubik, 2025 WL 817858, at *2.
- Plaintiffs' Counsel disregarded many Court-imposed deadlines throughout the entirety of the litigation including up to the eve of the second trial when Plaintiffs' Counsel failed to timely file his proposed voir dire, prompting another Court Order. ECF 433; see Jakubik, 2025 WL 817858, at *3.

8

- Plaintiffs' Counsel disregarded repeated Court Orders prior to the first trial to designate specific male comparators. See Jakubik, 2025 WL 817858, at *3–*6.

To put a finer point on it, as the docket reflects, Plaintiffs' Counsel failed to abide by a Court Order that he file an "offer of proof" prior to the first trial that complied with the Court's requirements. ECF 207 (Civil Action No. 20-1995); ECF 255. In the Court's view, identifying the comparators and specifying Plaintiffs' presentation of evidence would have been an important document that would have allowed the Court to either restrict Plaintiffs' approach as described above or modify it in some other manner. Instead, Plaintiffs' Counsel defied the Court's Orders, and the jury could not reach a verdict. The Court cannot conclude that Plaintiffs are entitled to any exceptionally high award of counsel fees from Defendant in view of the behavior of their counsel as documented in this and prior memoranda.

Several other factors strongly suggest reducing the lodestar amount.

1.    The Court learned during the second trial through Plaintiffs presentation of two summary exhibits that the Pennsylvania Department of Education publishes the compensation of all public schoolteachers in the state online. To the Court's recollection, Plaintiffs' Counsel never brought this to the Court's attention beforehand, which would have saved a lot of time and effort in counsel preparing the "chart" containing all the salaries referenced above.

2.    Plaintiffs' Counsel spent considerable time fighting the Court's decertification of the collective action after the Court had already rejected Plaintiffs' contention that the decertification was in error. ECF 326, ¶ 1. Plaintiffs' Counsel filed a separate second lawsuit on behalf of most of the former opt-in Plaintiffs as a reaction to the Court's decertification of the collective. Plaintiffs' Counsel also spent at least 20 hours preparing a Writ of Mandamus asking the Third Circuit to stay the second trial to allow for a collective action to be reinstated. See ECF

473 at 4 (3/16, 3/17, 3/18, 3/19, and 3/20 time entries). The Third Circuit denied mandamus. While the decertification issue may be raised on appeal, this Court believes that it is an appropriate factor to consider for reducing the lodestar as requested by Plaintiffs.

3. The Court also considers the fact that the defendant in this case is a school district in Pennsylvania, supported by taxpayer money. In the efforts to settle this case, which were unsuccessful, defense counsel repeatedly insisted that this school district did not have funds to make payment in any number approaching what Plaintiffs were demanding and that this was a major impediment to settlement. The Court believes that it is appropriate to consider the fact that Defendant is a public entity, not a private corporation, in making an award of counsel fees. See Perdue, 559 U.S. at 559 (considering in dicta that attorneys' fees in statutory fee-shifting cases are often "paid … by state and local taxpayers, and because state and local governments have limited budgets, money that is used to pay attorney's fees is money that cannot be used for programs that provide vital public services").

4. The Court is also compelled to consider the fact that Plaintiffs in this second trial sought damages awards of $871,410.13 collectively (excluding liquidated damages) and the jury reduced the damages to $165,000 collectively. Hensley v. Eckerhart, 461 U.S. 424, 436–39 (1983) (cautioning district courts against awarding excessive fees based on the amount recovered and remanding where "the District Court's opinion did not properly consider the relationship between the extent of success and the amount of the fee award").

In light of all the above considerations, the Court in its discretion applied a presumption that the lodestar was reasonable ($750 per hour for 1,222.2 hours worked) and used the amount Plaintiffs' Counsel would recover in a percentage recovery, which is reflective of Counsel's success in this litigation in recovering damages, as a cross-check to reduce the lodestar amount.

Several other courts in this District have reduced the lodestar amount and modified the contingency multiplier in a statutory fee shifting case. See, e.g., Middlebrooks v. Teva Pharms. USA, Inc., No. 17-cv-412, 2019 WL 936645 (E.D. Pa. Feb. 26, 2019) (Kearney, J.) (reducing requested fees of $639,778 to $403,947.27 and rejecting a contingency enhancement of $319,889); Eaves v. Cnty. of Cape May, 239 F.3d 527, 528 (3d Cir. 2001) (explaining the district court's methodology adjudicating the plaintiff's fee award, in which the district court calculated the lodestar, reduced it to account for limited success, and applied a modest contingency enhancement).

In the reply memorandum, Plaintiffs attach several declarations of other plaintiffs' attorneys supporting the request of Plaintiffs and their counsel for a very large increase in the attorneys' fees over what would be awarded by using a percentage of the judgment entered, which would amount to $48,142.05 on Rebecca Cartee-Haring's judgment (35% of $137,548.72) and $53,515.90 on Dawn Marinello's judgment (40% of $152,902.58). ECF 482. The Court notes that the declarants, Maurice Mitts, Sydney Gold, and Jeremy Heisler, are well-known and successful plaintiffs' attorneys, and the Court has taken their Declarations into account.[4] But these declarations do not take into account the above considerations concerning Plaintiffs' Counsel's behavior in this case.

* * *

Lest Plaintiffs or their counsel think that the Undersigned is hostile or antagonistic to awarding attorneys' fees with multipliers to counsel for plaintiffs, the Court directs the parties to a very recent decision awarding attorneys' fees to a group of plaintiffs' lawyers who joined together to bring and prosecute a case against DuPont and its various entities, arising out of a "spin-

---

[4] The Undersigned notes that one of the cases that Mr. Mitts cites as one of his successes concerns a very large verdict rendered by a jury in a case against CoreStates Bank, ECF 482-1, ¶ 6, but fails to note that on appeal to the Pennsylvania Supreme Court, this entire award was vacated. Pioneer Com. Funding Corp. v. Am. Fin. Mortg. Corp., 855 A.2d 818 (Pa. 2004).

11

off." Cockerill v. Corteva, Inc., No. 21-cv-3966, 2025 WL 1523002 (E.D. Pa. May 27, 2025). In its memorandum awarding fees to the plaintiffs' counsel, the Court noted how well-organized plaintiffs' counsel were in working together and how they had succeeded in proving liability against one of America's largest corporations on behalf of several employees/former employees, through the vehicle of a Rule 23 class action. Id. at *4. The total amount of fees awarded was $6.2 million, which reflected a great deal of time well spent, precise development of legal issues respecting precedent, and a very small enhancement over the hourly rates that were well established for plaintiffs' counsel.

### III.    DISCUSSION – PLAINTIFFS' MOTION FOR COSTS

Plaintiffs' Motion also asks this Court to award $217,738.62 in reimbursement for out-of-pocket costs Plaintiffs' Counsel incurred over the course of this litigation. ECF 471 at 5–6. Plaintiffs attach invoices to support their request for cost reimbursement. Exs. E–K to Mot. (ECF 471). Plaintiffs' Counsel claims payment for several categories of costs: court costs (including deposition services, document production, trial services, and filing fees) (Exhibits G–J); expert reports (Exhibits E and F); Rebecca Cartee-Haring's work as a paralegal (Exhibit K); and the Special Master's fee.

The Court will **grant in part** these requests and will reduce the recoverable costs to $119,863.62.

#### A. Court Costs

Plaintiffs' Counsel asks reimbursement for miscellaneous court costs, including for Sargent Reporting Service for depositions, Lexitas Reporting Service for depositions, MGM Trial Services for trial support, Kelly and Partners for document preparation and reproduction, and district court filing fees. ECF 471 at 5–6. Counsel attaches the following invoices in support of the request:

12

- Exhibit G (ECF 471-6): Various invoices from Sargent's Court Reporting Services relating to various deposition services. All invoices, except at page two, reflect that payment was made. The amounts total $5,898.35.

- Exhibit H (ECF 471-7): Various invoices from Lexitas for deposition transcripts. All invoices, except at page two, reflect that payment was made. The amounts total $10,481.95.[5]

- Exhibit I (ECF 471-8): Two invoices from MGM Trial Services for trial consulting of $6,878.07 and $15,386.88 for a total of $22,264.95.

- Exhibit J (ECF 471-9): Various invoices from Kelly Partners, Inc. for document production services, totaling $6,516.30.[6]

The Court will order Defendant to pay these requested expenses as presumptively valid court costs.

### B. Expert Reports

Plaintiffs' Counsel also asks for reimbursement for two expert reports prepared as part of the litigation: Bunin Associates and Bernard Siskin. In support, Counsel attaches invoices for services rendered, which total $17,500 for Bunin Associates (Exhibit E (ECF 471-4)) and $44,974.12 for Bernard Siskin (Exhibit F (ECF 471-5)).

The Court will order Defendant to pay these requested expenses associated with litigating the case.

### C. Rebecca Cartee-Haring Paralegal Work

The Court will **deny** the request for costs based on the work of one of the plaintiffs,

---

[5] Plaintiffs' Motion lists this expense as $10,498.90, a *de minimis* discrepancy with the Court's calculation of about $17. ECF 471 at 6. The Court will accept Plaintiffs representation as to the expense amount.

[6] As with Exhibit H, the Court will accept Plaintiffs' representation of $6,522.30, a *de minimis* discrepancy of $5.

13

Rebecca Cartee-Haring, who Mr. Mazurek asserts was hired as a paralegal to work on the companion Marinello case and suggests an hourly rate of $250. There is no indication that Plaintiffs' Counsel provided this Court or Defendant with any notice that he was hiring one of the Plaintiffs while the case was active. Furthermore, Plaintiffs do not cite any reported decision approving such a payment which the Court expects, at a minimum, before requiring Defendant to reimburse Plaintiffs for the salary that Mr. Mazurek asserts he paid to Ms. Cartee-Haring.

### D. Special Master's Fees

As described earlier in this memorandum, the Court appointed Shira Yoshor, Esquire, prior to the first trial to serve as a Special Master. The Court ordered that each party would be responsible for half of the Master's fee. ECF 208, ¶ 5; ECF 339. Plaintiffs' Motion requests reimbursement for its portion of the fee in the amount of $19,270. ECF 471 at 6. Of that $19,270, Plaintiffs wired a payment of $11,395 in August 2024 that never reached the Master due to suspected fraud.

Since Plaintiffs are the prevailing parties, the Court will require Defendant to pay Plaintiffs the balance of the $11,395 owed to the Special Master. However, the Court will deny reimbursement for the remaining $7,875, as the Court expects Plaintiffs' Counsel to be more diligent in scrupulously examining suspicious invoices, particularly when the invoice has different wiring instructions than prior invoices and the email address sending the invoice is spoofed (instead of "yoshors@gtlaw.com," the email came from "yoshors@gtlavv.us"). It is certainly an unfortunate reality, but these phishing scams have become far too frequent and require heightened diligence, particularly in the context of judicial proceedings.

### IV. CONCLUSION

For the foregoing reasons, the Court will **GRANT IN PART** and **DENY IN PART** Plaintiffs' Motion for Fees and Costs. The Court will reduce the requested fees from

$2,756,662.50 to $516,415.26, and will reduce the requested costs from $217,738.62 to $119,863.62.

\\adu.dcn\paed\PHL-DATA\Judge_Baylson\CIVIL 20\20-1995 Cartee-Haring v Central Bucks Sch\20cv1995 and 21cv2567 Memorandum re award of attys fees.docx